17-2449
Zubar v. Barr

BIA
A076 164 655/656/657/658

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 14th day of June, two thousand nineteen.

PRESENT:
> JOSÉ A. CABRANES,
> GERARD E. LYNCH,
> SUSAN L. CARNEY,
> *Circuit Judges.*

_____

OLGA ZUBAR, ALEKSANDR ZUBAR,
VLADIMIR ZUBAR, INNA ZUBAR,
> *Petitioners,*

> v.

WILLIAM P. BARR, UNITED STATES
ATTORNEY GENERAL,
> *Respondent.*

17-2449
NAC

_____

FOR PETITIONERS:       Alexander J. Segal, The Law
                       Offices of Grinberg & Segal,
                       P.L.L.C., New York, NY.

FOR RESPONDENT:        Chad A. Readler, Acting Assistant
                       Attorney General; Anthony C.
                       Payne, Assistant Director; Yedidya
                       Cohen, Trial Attorney, Office of
                       Immigration Litigation, United

States Department of Justice, Washington, DC.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is DENIED.

Petitioners Olga Zubar, Aleksandr Zubar, Vladimir Zubar,[1] and Inna Zubar, who are family members and natives and citizens of Ukraine, seek review of a BIA decision denying their motion to reopen. *In re Olga Zubar, Aleksandr Zubar, Vladimir Zubar, Inna Zubar*, Nos. A 076 164 655/656/657/658 (B.I.A. July 13, 2017). We assume the parties' familiarity with the underlying facts and procedural history, to which we refer only as needed to explain our decision to deny the petition.

We review the BIA's denial of a motion to reopen for abuse of discretion. *Ali v. Gonzales*, 448 F.3d 515, 517 (2d Cir. 2006). When the BIA considers evidence of country

---

[1] The Zubars' counsel has informed the Court that Vladimir Zubar died in April 2018. We therefore address the petition only as to the remaining family members.

2

conditions in evaluating a motion to reopen, we review the BIA's factual findings under the substantial evidence standard. *Jian Hui Shao v. Mukasey*, 546 F.3d 138, 169 (2d Cir. 2008).

An alien seeking to reopen may file one motion to reopen and may do so no later than 90 days after issuance of the final administrative decision. 8 U.S.C. § 1229a(c)(7)(A), (C)(i); 8 C.F.R. § 1003.2(c)(2). These time and number limitations do not apply, however, if the motion is filed to permit application for asylum "based on changed country conditions arising in the country of nationality or the country to which removal has been ordered, if such evidence is material and was not available and would not have been discovered or presented at the previous proceedings." 8 U.S.C. § 1229a(c)(7)(C)(ii); *see also* 8 C.F.R. § 1003.2(c)(3)(ii). An alien who seeks reopening must also establish prima facie eligibility for the relief sought. *Poradisova v. Gonzales*, 420 F.3d 70, 78 (2d Cir. 2005). Although in its decision the BIA noted the applicable time and number limitations, it recognized recent political

3

changes in the Crimean peninsula in Eastern Ukraine—where Petitioners last resided before coming to the United States— and denied reopening based on Petitioners' failure to show prima facie eligibility for asylum. Accordingly, we review only that determination. *See Lin Zhong v. U.S. Dep't of Justice*, 480 F.3d 104, 117 (2d Cir. 2007) ("a denial of immigration relief stands or falls on the reasons given by the IJ or BIA" (internal quotation marks and alterations omitted)).

At the threshold, movants seeking asylum must demonstrate "a 'realistic chance' that [they] will be able to establish eligibility." *Poradisova*, 420 F.3d at 78. To establish asylum eligibility based on a well-founded fear of persecution, an applicant must show that he or she subjectively fears persecution and that this fear is objectively reasonable. *Ramsameachire v. Ashcroft*, 357 F.3d 169, 178 (2d Cir. 2004). An alien may make this showing either by offering evidence that "he or she would be singled out individually for persecution" or by "prov[ing] the existence of a 'pattern or practice in his or her country

4

. . . of persecution of a group of persons similarly situated to the applicant.'" *Kyaw Zwar Tun v. INS*, 445 F.3d 554, 564 (2d Cir. 2006) (quoting 8 C.F.R. § 208.13(b)(2)(iii)). Because the Zubars did not offer evidence that they "would be singled out individually for persecution," they were required to establish a "pattern or practice" of persecution of ethnic Ukrainians in their home country. *See id.*

The Zubars, ethnic Ukrainians with roots in Western Ukraine, argue that they were not required to demonstrate a pattern or practice of persecution of ethnic Ukrainians across the country, but only in the Crimean peninsula in Eastern Ukraine, the family's last place of residence in the country. Even if we accept this proposition, however, we identify no error in the BIA's determination that the Zubars failed to carry their burden. Although the record contains evidence of human rights abuses in the Crimean peninsula, the Zubars presented little evidence that any danger that ethnic Ukrainians may be facing in Crimea rises to the level of persecution.

5

One record report by an international organization notes in its discussion of disappearances occurring there that, "[i]n Crimea, the targeted individuals primarily included pro-Maidan activists, journalists and members of the Armed Forces of Ukraine." Certified Administrative Record ("CAR") at 282 (Human Rights Assessment Mission in Ukraine, Report by the Organization for Security and Co-operation in Europe ("OSCE Report")). The Zubars point to the OSCE Report's statement that "[i]dentifying as Ukrainian and supporting Ukrainian unity is allegedly perceived negatively by a significant proportion of the population in Crimea." *Id.* at 340. But, that some individuals who identify as Ukrainian may be "perceived negatively" by many in Crimea does not establish that ethnic Ukrainians are persecuted there. As we have observed, "persecution is an extreme concept that does not include every sort of treatment our society regards as offensive." *Mei Fun Wong v. Holder*, 633 F.3d 64, 72 (2d Cir. 2011) (internal quotation marks omitted). Nor does it "encompass all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional." *Id.*

The OSCE Report also describes how individuals speaking Ukrainian in public have been "harassed." CAR at 340. Similarly, harassment does not amount to persecution. *See Ivanishvili v. U.S. Dep't of Justice*, 433 F.3d 332, 341 (2d Cir. 2006). Further, even if individuals in Crimea are harassed for speaking Ukrainian, it appears from the record that the Zubars are not similarly situated to these individuals because Russian is their native language. In addition, reports that ethnic Ukrainians have become generally fearful since the Russian annexation, *e.g.*, CAR at 408, 434, are also insufficient, either alone or considered together with the descriptions discussed above, to make a prima facie showing of a pattern or practice of harm rising to the level of persecution. *See In re A-M-*, 23 I. & N. Dec. 737, 741 (BIA 2005) (describing a pattern or practice of persecution as the "systemic or pervasive" persecution of a group).

For these reasons, the BIA did not abuse its discretion in concluding that the country conditions evidence adduced by the Zubars does not establish that they have a "realistic

chance" of showing a pattern or practice amounting to persecution of ethnic Ukrainians residing in Crimea. *Poradisova*, 420 F.3d at 78; *see In re A-M-*, 23 I. & N. Dec. at 741.

For the foregoing reasons, the petition for review is DENIED. As we have completed our review, the pending motion for a stay of removal in this petition is DISMISSED as moot.

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court

8